John J. Nelson (SBN: 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive-Penthouse Suite
Tel: (858) 209-6941
jnelson@milberg.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GARY REID GALBREATH**, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**EMCENTRIX, INC.**,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Gary Reid Galbreath ("Plaintiff") brings this Class Action Complaint ("Complaint"), on behalf of himself and all others similarly situated, against Defendant EmCentrix, Inc. ("EmCentrix" or "Defendant") for failure to properly secure and safeguard Plaintiff's and Class members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, the "Private Information") stored within Defendant's information network and alleging as follows, based upon information and

belief and investigation of counsel, except as to the allegations specifically pertaining to them, which is based on personal knowledge:

## NATURE OF THE CASE

1. This class action arises out of Defendant's failures to properly secure, safeguard, encrypt, and/or timely and adequately destroy Plaintiff's and Class members' (defined below) sensitive Private Information that it had acquired and stored for its business purposes.

2. Entities that provide services and handle customers and employees' sensitive Private Information owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of Private Information to unauthorized persons, especially hackers with nefarious intentions, will result in harm to the affected individuals, including, but not limited to, the invasion of their private financial matters.

3. The harm resulting from a breach of private data manifests in a number of ways, including identity theft and financial fraud. The exposure of a person's Private Information through a data breach ensures that such person will be at a substantially increased and certainly impending risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk, to the extent it is even possible to do so,

requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and to take a number of additional prophylactic measures.

4. As a provider of HR, human resource, benefits, and payroll services, EmCentrix knowingly obtains sensitive customer and employee Private Information and has a resulting duty to securely maintain such information in confidence.

5. As discussed in more detail below, EmCentrix breached its duty to protect the sensitive Private Information entrusted to it. As such, Plaintiff brings this Class action on behalf of himself other individuals whose Private Information was accessed and exposed to unauthorized third parties during a data breach of Defendant's system which was announced when EmCentrix posted a notice on its website[1] and began mailing out notices to affected individuals on or about June 26, 2025. (the "Data Breach").

6. According to cybernews sources, between August 11 and August 14, 2024, a ransomware group accessed Defendant's information network and

[1]. https://cybernews.com/privacy/emcentrix-data-breach-exposes-thousands/ (last visited July 1, 2025).

exfiltrated data from Defendant's network.[2] However, Defendant has failed to disclose the nature of the attack.[3] According to information Defendant provided to the Attorneys General of California, Maine, Montana, and Vermont, the breach affected approximately 59,000 individuals' Private Information.[4]

7. Additionally, the data stolen included Plaintiff's and Class members' Private Information, including customers' names, Social Security numbers and financial account information.[5] *See* Notice of Data Security Incident, attached as Exhibit A.

8. As a direct and proximate result of EmCentrix's inadequate data security, and its breach of its duty to handle Private Information with reasonable care, Plaintiff's Private Information has been accessed by hackers, potentially posted on the dark web, and exposed to an untold number of unauthorized individuals.

9. Plaintiff is now at a significantly increased and certainly

---

[2] *Id.*
[3] *Id.*
[4] *See, e.g.,* California Attorney General, Notice of Data Breach, https://oag.ca.gov/ecrime/databreach/reports/sb24-604542 (last visited July 1, 2025).
[5] *Id.* n.1, *supra*.

impending risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of his health privacy, and similar forms of criminal mischief, and such risk may last for the rest of his life. Consequently, Plaintiff must devote substantially more time, money, and energy to protect himself, to the extent possible, from these crimes.

10. Plaintiff, on behalf of himself and others similarly situated, brings claims for negligence, breach of a third-party contract, breach of fiduciary duty, breach of confidences, unjust enrichment and declaratory judgment, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

11. To recover from EmCentrix for its sustained, ongoing, and future harms, Plaintiff and Class members seek damages in an amount to be determined at trial, declaratory judgment, and injunctive relief requiring Defendant to: 1) disclose, expeditiously, the full nature of the Data Breach and the types of Private Information accessed, obtained, or exposed by the hackers; 2) implement improved data security practices to reasonably guard against future breaches of Private Information possessed by Defendant; and 3) provide, at its own expense, all impacted victims with lifetime identity theft protection services.

## PARTIES

**Plaintiff**

12. Plaintiff Gary Reid Galbreath is an adult individual and, at all relevant times herein, a resident and citizen of Nevada. Some time prior to August 2024, Plaintiff obtained HR, benefits, and payroll services through an employer that utilizes the EmCentrix network and, therefore, is an EmCentrix customer and a Data Breach victim.

13. On or about June 26, 2025, Plaintiff was notified of the Data Breach and of the impact to his Private Information via letter from Defendant. *See* Notice of Data Security Incident, attached as Exhibit A.

14. As a result of Defendant's conduct, Plaintiff suffered actual damages including, without limitation, time related to monitoring his financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of his personal information, and other economic and non-economic harm. Plaintiff and Class members will now be forced to expend additional time, efforts, and potentially expenses to review their credit reports, monitor their financial accounts, and monitor for fraud or identify theft – particularly since the compromised information may include Social Security numbers.

**Defendant EmCentrix, Inc.**

15. Defendant EmCentrix, Inc., is a Nevada corporation authorized to conduct business in this state and maintains its headquarters at 6300 Canoga Avenue, Suite 530, Woodland Hills, California 91367.

16. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff.

17. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the responsible parties when their identities become known.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). The amount in controversy in this Class action exceeds $5,000,000, exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

19. This Court has personal jurisdiction over the parties in this case. Defendant EmCentrix conducts business in this District and is a citizen of this District by virtue of having a principal place of business located in this

District.

20. Venue is proper in this District under 28 U.S.C. §1391(b) because EmCentrix maintains a headquarters in this District and regularly conducts business in this District.

## FACTUAL BACKGROUND

**EmCentrix and the Services it Provides.**

21. EmCentrix is an "HR technology / payroll integration developer founded in Nevada in 2001 with the goal of creating great software that helps make the lives of HR & payroll professionals easier."[6] Its software "connects all aspects of human resources, from job application to retirement. The system helps you record and track the entirety of an employee's data, from basic *demographics and address data*, to selection, training and development, capabilities and skills management, *compensation* planning records, vacation days and sick days, performance reviews, as well as training and *management of benefits*. All of this information is *shared and updated throughout the enterprise*, without the need for redundant data entry."[7]

22. EmCentrix represents that it "provides an extensive set of

[6] https://www.emcentrix.com/about_us.html (last visited July 1, 2025).
[7] *Id. (emphasis added).*

security services based on the latest state-of-the-art security technologies on the market. These security services are designed, deployed, maintained and monitored 24x7x365 to provide the highest-level enterprise security to us on a contracted basis."[8] Additionally, that it "uses Fortinet's advanced FortiGate Antivirus Firewalls for Enterprise. FortiGate Antivirus Firewalls for Enterprise meets our enterprise-class requirement for performance, availability and reliability. It includes all of the key capabilities provided by other FortiGate models, with integrated, real-time antivirus, firewall, VPN, network intrusion detection and prevention, and traffic-shaping services."[9]

23. Moreover, EmCentrix should have been aware that accounting, tax and business advisory firms have become a prime target for cybercriminals, and thus alerted to its susceptibility to cyberattack, and taken proactive measures to enhance its data security.[10] An article in the Kansas City Star reports "[h]ackers focus on financial services because these firms store valuable client data, including financial information and personally identifiable information. Cybercriminals exploit gaps in security to steal this

---

[8] https://www.emcentrix.com/security.html (last visited July 1, 2025)
[9] *Id.*
[10] https://www.kansascity.com/news/business/personal-finance/article299479089.html (last visited July 1, 2025).

data for identity theft, fraud, or sale on the dark web."[11]

24. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals… because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[12]

25. For example, in 2023, the number of data compromises in the United States stood at 3,205 cases, affecting over 353 million individuals.[13]

26. The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Defendant's customers and employees especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

27. PII is a valuable property right.[14] The value of PII as a

---

[11] *Id.*

[12] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[13] https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/ (last visited July 1, 2025).

[14] *See* Marc Van Lieshout, *The Value of Personal Data*, 457 IFIP ADVANCES IN INFORMATION & COMMUNICATION TECHNOLOGY 26 (July 1015),

commodity is measurable.[15] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[16] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[17] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

28. As a result of its real value and the recent large-scale data breaches, identity thieves and cybercriminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information

---

https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . . ").

[15] Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (Apr. 28, 2014), http://www.medscape.com/viewarticle. /824192.

[16] *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD 4 (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[17] *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERTISING BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

exposed in the Data Breach, can be aggregated, and becomes more valuable to thieves and more damaging to victims.

29. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[18]

30. Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing

---

[18] United States Government Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited July 1, 2025).

the criminal with additional information.

31. Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[19]

32. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

33. Based on the value of its customers' and employees' Private Information to cybercriminals and cybercriminals' propensity to target businesses, EmCentrix certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

**EmCentrix Breached its Duty to Protect its Customers and Employees Private Information.**

[19] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) Information Systems Research 254 (June 2011), https://www.guanotronic.com/~serge/papers/weis07.pdf.

34. On or about June 26, 2025, EmCentrix announced that it experienced a security incident disrupting access to its systems. As above, the breach occurred when a ransomware group, exfiltrated massive amounts of data from EmCentrix's information network.[20]

35. Presently, however, Defendant has provided no public information on the ransom demand or payment. Additionally, EmCentrix failed to explain why it waited for nearly 10 months after the initial breach before notifying affected participants, such as Plaintiff and other Class members.

36. As noted above, the Private Information compromised in the Data Breach includes names, Social Security numbers and financial account information.

37. Like Plaintiff, other potential Class members received similar notices informing them that their Private Information was exposed in the Data Breach.

---

[20] *Id.,* n.1, *supra*.

**FTC Guidelines Prohibit EmCentrix from Engaging in Unfair or Deceptive Acts or Practices.**

38. EmCentrix is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

39. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[21]

40. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities,

[21] *Start with Security – A Guide for Business*, United States Federal Trade Comm'n (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

and implement policies to correct any security problems.[22]

41. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[23]

42. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

43. EmCentrix failed to properly implement basic data security practices. EmCentrix's failure to employ reasonable and appropriate measures

---

[22] *Protecting Personal Information: A Guide for Business*, United States Federal Trade Comm'n, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[23] *Id.*

to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

44. EmCentrix was at all times fully aware of its obligations to protect customers' and employees' Private Information, which gave it direct access to reams of customer and employee Private Information. Defendant is also aware of the significant repercussions that would result from its failure to do so.

**Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft.**

45. Cyberattacks and data breaches at companies that store PII and PHI are especially problematic because they can negatively impact on the overall daily lives of individuals affected by the attack.

46. In 2019, the United States Government Accountability Office released a report addressing the steps consumers can take after a data breach.[24] Its appendix of steps consumers should consider, in extremely simplified terms, continues for five pages. In addition to explaining specific options and

[24] https://www.gao.gov/assets/gao-19-230.pdf (last visited July 1, 2025).

how they can help, one column of the chart explains the limitations of the consumers' options. It is clear from the GAO's recommendations that the steps Data Breach victims (like Plaintiff and Class) must take after a breach like Defendant's are both time consuming and of only limited and short-term effectiveness.

47. That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into

disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

48. Theft of PII is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

49. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports.[25]

50. Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access

---

[25] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last accessed July 1, 2025).

to it, they will use it" to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new driver's license or ID, and/or use the victim's information in the event of arrest or court action.

51. Identity thieves can also use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, and/or rent a house or receive medical services in the victim's name.

52. Moreover, theft of Private Information is also gravely serious because PII and PHI are extremely valuable property rights.[26]

53. Each year, identity theft causes tens of billions of dollars of losses to victims in the United States. For example, with the Private Information stolen in the Data Breach, which includes Social Security numbers, identity thieves can open financial accounts, commit medical fraud,

---

[26] *See, e.g.*, John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft. These criminal activities have and will result in devastating financial and personal losses to Plaintiff.

54. As discussed above, Private Information is such a valuable commodity to identity thieves, and once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

55. Social Security Numbers are particularly sensitive pieces of personal information. As the Consumer Federation of America explains:

**Social Security number:** *This is the most dangerous type of personal information in the hands of identity thieves* because it can open the gate to serious fraud, from obtaining credit in your name to impersonating you to get medical services, government benefits, your tax refund, employment—even using your identity in bankruptcy and other legal matters. It's hard to change your Social Security number and it's not a good idea because it is connected

to your lift in so many ways.[27]

56. For instance, with a stolen Social Security Number, which is only one subset of the PII compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[28]

57. The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines.[29] Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[30] Each of these fraudulent activities is difficult to detect. An individual may not know that his or his Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the

---

[27] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number* (Nov. 2, 2017), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (emphasis added).

[28] *Id.*

[29] *Id.*

[30] *Id.* at 4.

suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected because one was already filed on their behalf.

58. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[31]

59. This was a financially motivated Data Breach, as the only reason the cybercriminals go through the trouble of running a targeted cyberattack against companies like EmCentrix is to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information

---

[31] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft.

and Social Security Numbers are worth more than 10x on the black market."

60. Indeed, a Social Security number, date of birth, and full name can sell for $60 to $80 on the digital black market.[32] "[I]f there is reason to believe that your personal information has been stolen, you should assume that it can end up for sale on the dark web."[33]

61. These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to PII, they *will use it.*[34]

62. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years later. As with income tax returns, an individual may not know that his or his Social Security number was used to file for unemployment benefits until law enforcement notified the individual's employer of the suspected fraud.

63. For example, on average it takes approximately three months for

---

[32] Michael Kan, *Here's How Much Your Identity Goes for on the Dark Web*, (Nov. 15, 2017), https://www.pcmag.com/news/heres-how-much-your-identity-goes-for-on-the-dark-web.

[33] *Dark Web Monitoring: What You Should Know*, Consumer Federation of America (Mar. 19, 2019), https://consumerfed.org/consumer_info/dark-web-monitoring-what-you-should-know/.

[34] *Id.*

consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[35]

64. Cybercriminals can post stolen Private Information on the cyber black-market for years following a data breach, thereby making such information publicly available.

65. Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happened.[36] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[37]

66. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting

[35] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[36] *See* Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last visited July 1, 2025).

[37] *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages*"), EXPERIAN, https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last visited July 1, 2025).

themselves in the future.[38]

67. It is within this context that Plaintiff must now live with the knowledge that his Private Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

68. A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information.




[38] *Guide for Assisting Identity Theft Victims*, FED. TRADE COMM'N, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

69. Victims of the Data Breach, like Plaintiff, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their privacy and credit because of the Data Breach.[39]

70. As a direct and proximate result of the Data Breach, Plaintiff has had his Private Information exposed, have suffered harm as a result, and have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft. Plaintiff must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on his everyday life, including purchasing identity theft and credit monitoring services every year for the rest of his life, placing "freezes" and "alerts" with credit reporting agencies, contacting his financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

71. Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which remains in EmCentrix's

---

[39] *Id.*

possession is protected from further public disclosure by the implementation of better employee training and industry standard and statutorily compliant security measures and safeguards. EmCentrix has shown itself to be wholly incapable of protecting Plaintiff's Private Information.

72. Plaintiff and Class members also have an interest in ensuring that their personal information that was provided to EmCentrix is removed from EmCentrix's unencrypted files.

**Plaintiff and the Class Suffered Damages.**

**Facts Relevant To Plaintiff Gary Reid Galbreath**

73. EmCentrix received Plaintiff Galbreath's Private Information in connection with its services. In requesting and maintaining Plaintiff's Private Information for business purposes, EmCentrix expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff's and Class members' Private Information. EmCentrix did not, however, take proper care of Plaintiff's and Class members' Private Information, leading to its exposure to and exfiltration by cybercriminals as a direct result of EmCentrix's inadequate security measures.

74. In June 2025, Plaintiff received notice from Defendant notifying his that a security incident exposed his Private Information to criminals.

75. Upon receiving the Notice, Plaintiff spent time reviewing his credit reports, reviewing various credit alerts received by text and email, checking his financial information, and dealing with increased spam text messages and emails.

76. Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of unauthorized third parties and possibly criminals. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach.

77. Plaintiff has experienced anxiety and increased concerns arising from the fact that his Private Information has been or will be misused and from the loss of his privacy.

78. The risk is not hypothetical. Here, a known hacking group intentionally stole the data, misused it, threatened to publish, or has published it on the Dark Web, and the sensitive information, including names and Social Security numbers, is the type that could be used to perpetrate identity theft or fraud.

79. Plaintiff further suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information —a form of

intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

80. Future identity theft monitoring is reasonable and necessary, and such services will include future costs and expenses.

81. Plaintiff has a continuing interest in ensuring that his Private Information which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Plaintiff's And Class Members' Damages**

82. For the reasons mentioned above, EmCentrix's conduct, which allowed the Data Breach to occur, caused Plaintiff and Class members significant injuries and harm in several ways. Plaintiff and Class members must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff and Class members have taken or will be forced to take

these measures in order to mitigate their potential damages as a result of the Data Breach.

83. Once Private Information is exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class members will need to maintain these heightened measures for years, and possibly their entire lives as a result of Defendant's conduct.

84. As a result of Defendant's failures, Plaintiff and Class members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or misuse of their Private Information.

85. Further, because Defendant delayed in discovering and notifying Plaintiff about the Data Breach, Plaintiff was unable to take affirmative steps during that time period to attempt to mitigate any harm or take prophylactic steps to protect against injury.

86. From a recent study, 28% of consumers affected by a data breach become victims of identity fraud—this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only

about 3%.[40]

87. Plaintiff is also at a continued risk because his information remains in EmCentrix's computer systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as EmCentrix fails to undertake the necessary and appropriate security and training measures to protect its customers' and employees' Private Information.

88. In addition, Plaintiff and Class members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private medical information to strangers.

## **CLASS ALLEGATIONS**

89. Plaintiff brings all counts, as set forth below, individually and as a Class action, pursuant to the provisions of the Fed. R. Civ. P. 23, on behalf of a Class defined as:

All individuals within the United States of America whose Private

---

[40] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KNOWBE4, https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud (last visited July 1, 2025).

Information and/or financial information was exposed to unauthorized third-parties as a result of the data breach experienced by Defendant including all who received a Notice of the Data Breach (the "Class").

90. Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

91. This proposed Class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the Class definition in an amended pleading or when he moves for Class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

92. **Numerosity – Fed. R. Civ. P. 23(a)(1)**: Plaintiff is informed and believes, and thereon alleges, that there are at minimum, over 59,000 members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through EmCentrix's records, including but not limited to the files implicated in the Data Breach.

93. **Commonality – Fed. R. Civ. P. 23(a)(2):** This action involves

questions of law and fact common to the Class. Such common questions include, but are not limited to:

a. Whether EmCentrix had a duty to protect Plaintiff's and Class members' Private Information;

b. Whether EmCentrix was negligent in collecting and storing Plaintiff's and Class members' Private Information, and breached its duties thereby;

c. Whether EmCentrix breached its fiduciary duty to Plaintiff and the Class;

d. Whether EmCentrix breached its duty of confidence to Plaintiff and the Class;

e. Whether EmCentrix violated its own Privacy Practices;

f. Whether EmCentrix entered a contract implied in fact with Plaintiff and the Class;

g. Whether EmCentrix breached that contract by failing to adequately safeguard Plaintiff's and Class members' Private Information;

h. Whether EmCentrix was unjustly enriched;

i. Whether Plaintiff and Class members are entitled to damages as a result of EmCentrix's wrongful conduct; and

j. Whether Plaintiff and Class members are entitled to restitution as a result of EmCentrix's wrongful conduct.

94. **Typicality – Fed. R. Civ. P. 23(a)(3)**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class all had information stored in EmCentrix's System, each having their Private Information exposed and/or accessed by an unauthorized third party.

95. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(3)**: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex Class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

96. **Injunctive Relief, Fed. R. Civ. P. 23(b)(2):** Defendant has acted and/or refused to act on grounds that apply generally to the Class therefore

making injunctive and/or declarative relief appropriate with respect to the Class under 23(b)(2).

97. **Superiority, Fed. R. Civ. P. 23(b)(3):** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for EmCentrix. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

98. EmCentrix has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

99. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of

which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether EmCentrix failed to timely and adequately notify the public of the Data Breach;

b. Whether EmCentrix owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c. Whether EmCentrix's security measures to protect its data systems were reasonable in light of best practices recommended by data security experts;

d. Whether EmCentrix's failure to institute adequate protective security measures amounted to negligence;

e. Whether EmCentrix failed to take commercially reasonable steps to safeguard consumers' and employees' Private Information; and

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

100. Finally, all members of the proposed Class are readily ascertainable. EmCentrix has access to Class members' names and addresses

affected by the Data Breach. Class members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(Plaintiff on behalf of the Class)**

101. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

102. Plaintiff brings this claim individually and on behalf of the Class.

103. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their Private Information in its possession, custody, and control.

104. Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

105. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of the Defendant. By collecting and storing valuable Private Information that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

106. Defendant breached the duties owed to Plaintiff and Class members and thus was negligent. As a result of a successful attack directed to Defendant that compromised Plaintiff's and Class members' Private Information, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur:

(a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive Private Information.

107. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their Private Information would not have been compromised.

108. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including, but not limited to:

a. Theft of their Private Information;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised

accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

109. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF THIRD-PARTY BENEFICIARY CONTRACT**
**(Plaintiff on behalf of the Class)**

110. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

111. Plaintiff brings this claim individually and on behalf of the Class.

112. Upon information and belief, Defendant entered into contracts with its corporate customers to provide services that included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was entrusted to it.

113. Such contracts were made expressly for Plaintiff's and the Class' benefit as it was their Private Information that Defendant agreed to receive, store, utilize, transfer, and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties and Plaintiff and Class Members were direct and express beneficiaries of such contracts.

114. Defendant knew or should have known that if it were to breach these contracts with its customers, Plaintiff and Class Members would be harmed.

115. Defendant breached its contracts with corporate customers by, among other things, failing to adequately secure Plaintiff and Class Members' Private Information, and, as a result, Plaintiff and Class Members were harmed by Defendant's failure to secure their Private Information.

116. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members are at a current and ongoing risk of identity theft, and Plaintiff and Class Members sustained incidental and consequential damages including: (i) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out of pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) diminution of value of their Private Information; (vii) future costs of identity theft monitoring; (viii) and the continued risk to their Private Information, which remains in Defendant's control, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

117. Plaintiff and Class Members are entitled to compensatory,

consequential, and nominal damages suffered as a result of the Data Breach.

118. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**THIRD CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(Plaintiff on behalf of the Class)**

119. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

120. Plaintiff and Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

121. As a recipient of consumers' Private Information, Defendant has a fiduciary relationship to Plaintiff and the Class members.

122. Because of that fiduciary relationship, Defendant was provided with and stored private and valuable Private Information related to Plaintiff and the Class. Plaintiff and the Class were entitled to expect their information

would remain confidential while in Defendant's possession.

123. Defendant owed a fiduciary duty under common law to Plaintiff and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

124. As a result of the parties' fiduciary relationship, Defendant had an obligation to maintain the confidentiality of the information within Plaintiff's and the Class members' records.

125. Defendant had possession and knowledge of confidential Private Information of Plaintiff and Class members, information not generally known.

126. Plaintiff and Class members did not consent to nor authorize Defendant to release or disclose their Private Information to unknown criminal actors.

127. Defendant breached its fiduciary duties owed to Plaintiff and Class members by, among other things:

a. mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and

compromise of Private Information;

b. mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks;

c. failing to design and implement information safeguards to control these risks;

d. failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures;

e. failing to evaluate and adjust its information security program in light of the circumstances alleged herein;

f. failing to detect the breach at the time it began or within a reasonable time thereafter;

g. failing to follow its own privacy policies and practices published to its customers and employees; and

h. failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive Private Information.

128. But for Defendant's wrongful breach of its fiduciary duties owed to Plaintiff and Class members, their Private Information would not have been compromised.

129. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries, including:

a. Theft of their Private Information;

b. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

c. Costs associated with purchasing credit monitoring and identity theft protection services;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

130. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONFIDENCE**
**(Plaintiff on behalf of the Class)**

131. Plaintiff restates and realleges the preceding allegations above as

if fully alleged herein.

132. Plaintiff and Class Member have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

133. Plaintiff and Class members provided Defendant with their personal and confidential Private Information under both the express and/or implied agreement of Defendant to limit the use and disclosure of such Private Information.

134. Defendant owed a duty to Plaintiff and Class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

135. Plaintiff's and Class members' Private Information is not generally known to the public and is confidential by nature.

136. Plaintiff and Class members did not consent to nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

137. Defendant breached the duties of confidence it owed to Plaintiff and Class members when their Private Information were disclosed to unknown criminal hackers.

138. Defendant breached its duties of confidence by failing to safeguard Plaintiff's and Class members' Private Information, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its customers; (h) storing Private Information in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and

release of Plaintiff's and Class members' Private Information to a criminal third party.

139. But for Defendant's wrongful breach of its duty of confidences owed to Plaintiff and Class members, their privacy, confidences, and Private Information would not have been compromised.

140. As a direct and proximate result of Defendant's breach of Plaintiff's and Class members' confidences, Plaintiff and Class members have suffered injuries, including:

a. The erosion of the essential and confidential relationship between Defendant and Plaintiff and Class members as parties that were subject to the business relationship;

b. Theft of their Private Information;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity

from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the EmCentrix Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

i. Continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

j. Loss of personal time spent carefully reviewing financial and medical statements to check for charges for services not received.

141. Defendant breached the confidence of Plaintiff and Class members when it made an unauthorized release and disclosure of their confidential information and, accordingly, it would be inequitable for Defendant to retain the benefit at Plaintiff's and Class members' expense.

142. As a direct and proximate result of Defendant's breach of its duty of confidences, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff on behalf of the Class)**

143. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

144. Plaintiff brings this claim individually and on behalf of the Class.

145. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class members.

146. As such, a portion of the payments made by or on behalf of Plaintiff sand the Class members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is

allocated to data security is known to Defendant.

147. Plaintiff and Class members conferred a monetary benefit on Defendant. In exchange, Plaintiff and Class members should have received from Defendant the goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

148. Defendant knew that Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class members for business purposes.

149. In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

150. Under the principles of equity and good conscience, Defendant

should not be permitted to retain the money belonging to Plaintiff and Class members, because Defendant failed to implement appropriate data management and security measures that are mandated by its common law and statutory duties.

151. Defendant failed to secure Plaintiff and Class members' Private Information and, therefore, did not provide full compensation for the benefit Plaintiff and Class members provided.

152. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

153. If Plaintiff and Class members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to have their information provided to Defendant.

154. Plaintiff and Class members have no adequate remedy at law.

155. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered injuries, including, but not limited to:

a. Theft of their Private Information;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others;

h. Continued risk of exposure to hackers and thieves of their Private

Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class members.

156. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm.

157. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class members overpaid for Defendant's human resource, benefits, and payroll services.

**SIXTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(Plaintiff on behalf of the Class)**

158. Plaintiff restates and realleges the preceding allegations in the paragraphs above as if fully alleged herein.

159. Plaintiff brings this claim individually and on behalf of the Class.

160. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

161. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class members' Private Information, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from future data breaches that compromise their Private Information. Plaintiff and the Class remain at imminent risk that additional compromises of their Private Information will occur in the future.

162. The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' Private Information.

163. Defendant still possess Plaintiff's and Class members' Private Information.

164. Defendant has made no announcement that it has changed its data storage or security practices relating to the storage of Plaintiff's and Class members' Private Information.

165. To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

166. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at EmCentrix. The risk of another such breach is real, immediate, and substantial.

167. The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at EmCentrix, Plaintiff and Class members will likely continue to be subjected to a heightened, substantial, imminent risk of fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

168. Issuance of the requested injunction will not compromise the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at EmCentrix, thus eliminating the additional injuries that would result to Plaintiff and Class members, along with other consumers whose Private Information would be further compromised.

169. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that EmCentrix implement and maintain reasonable security measures, including but not limited to the following:

a. Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on EmCentrix's systems on a periodic basis, and ordering EmCentrix to promptly correct any p EmCentrix roblems or issues detected by such third-party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

d. Purging, deleting, and destroying Private Information not necessary for its provisions of human resource, benefits, and payroll services in a reasonably secure manner;

e. Conducting regular database scans and security checks; and

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gary Reid Galbreath, on behalf of himself and all others similarly situated, pray for relief as follows:

a. For an Order certifying this action as a Class action and appointing Plaintiff as a Class Representative and his counsel as Class Counsel;

b. For equitable relief enjoining EmCentrix from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

c. For equitable relief compelling EmCentrix to utilize appropriate

methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Data Breach;

d. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of EmCentrix's wrongful conduct;

e. Ordering EmCentrix to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g. For an award of punitive damages, as allowable by law;

h. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i. Pre- and post-judgment interest on any amounts awarded; and,

j. Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

A jury trial is demanded by Plaintiff on all claims so triable.

Dated: July 2, 2025

Respectfully submitted,

By: */s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

Marc H. Edelson*
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
T: (215) 867-2399
medelson@edelson-law.com
lverderame@edelson-law.com

*Attorneys for Plaintiff and the Putative Class*

* *pro hac vice* anticipated